**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**STEDROY E. BLAKE, Defendant**

Case No. SX-10-CR-721

Superior Court of the Virgin Islands

Division of St. Croix

January 3, 2012

BRADY, *Judge*

## MEMORANDUM OPINION

(January 3, 2012)

THIS MATTER came before the Court on Defendant's Motion to Dismiss and the People's Opposition thereto. For the following reasons, Defendant's Motion will be denied.

## I. Summary of Hearing

This case stems from an incident that occurred on December 13, 2010 in the vicinity of the Club Comanche Hotel, Christiansted, in the Judicial District of St. Croix. At or around 8:15 p.m., Police Officers Huertas and France were patrolling the area in an unmarked police car, but dressed in clothing that clearly identified them as police officers, as there had been several robberies in the area around that time. While patrolling, the two officers saw a male individual walking along the sidewalk of Queen Cross Street with his face mostly covered by a hooded jacket.

The two Officers, suspicious of the individual, called out to him, identifying themselves as police officers, and asked to talk with him. The individual ignored the police officers, pulled his hood to completely hide his face, and continued walking down the street, turning right at Strand Street. After more attempts to speak with the individual were ignored, Officer France exited the vehicle to speak with the individual. The individual ran off, and Officers France and Huertas gave chase. The officers lost sight of the individual, but soon thereafter, they recognized the Defendant at Pleasant's Bar, dressed in the same jacket and pants, and of the same height and weight as the individual who ran away from them moments before.

Officer Huertas approached the Defendant, and asked to speak with him outside of the bar. Defendant began to leave, guided by Officer Huertas putting his hand on Defendant's left shoulder. At that point, Officer Huertas testified that the Defendant elbowed him in the chest, and a scuffle ensued in which Officer Huertas sustained an injury to his neck when his chain was ripped off by the Defendant. People's Exhibit 1 was admitted into evidence without any objection by Defense Counsel. The exhibit was a photograph of Officer Huertas' face and neck which documented his bloody neck injury.

Defendant was thereafter arrested and charged with assaulting a police officer and interfering with an officer discharging his duty. Defendant filed the instant motion, requesting a dismissal on the grounds that the stop and seizure of the Defendant by the police was improper as a violation of Defendant's Fourth Amendment rights.

## II. Standard of Review

■ "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and

15

control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The right against unreasonable searches and seizures is protected by the Fourth Amendment. Thus, for the stop to be proper, the officers must first have had reasonable suspicion to stop the Defendant.

■ A "Terry" stop, simply put, is an investigatory process which usually entails a vehicular stop, but encompasses any attempt by a law enforcement officer to literally stop an individual to question the person. The standard used by the Courts in American jurisprudence is the "totality of the circumstances test." *See* BLACK'S LAW DICTIONARY, Ninth Edition, p. 1628. This standard is used not only for arrests and warrants where the proof must meet probable cause but also for the type of stop central to this case which requires proof of a "reasonable suspicion to believe that 'criminal activity may be afoot.' " *U.S. v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). In this Opinion, this standard of proof relative to the evidence adduced at the Motion To Dismiss Hearing on November 30, 2011 will be applied.

## III. Analysis

First, it is undisputed in the testimony at the hearing that no stop occurred when the police officers initially encountered the defendant while on the streets of Christiansted. The only stop that did occur was at some point in or outside of Pleasant's bar, and that is where this Court will focus its analysis.

■ ■ Defendant's primary argument is that the stop and seizure occurred the moment Officer Huertas placed his hand on Defendant's shoulder. To support this contention, Defendant cites *California v. Hodari D.* for the proposition that any touching, however slight, by a police officer will constitute a seizure and an arrest. 499 U.S. 621, 625, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). However, Defendant failed to note that while a slight touching can constitute an arrest, it is only if that touching is made by the party making the arrest, and for the purpose of making that arrest. In this particular case, it is clear from the testimony that Officer Huertas was not then attempting to arrest the Defendant, but rather to get the Defendant to leave the bar out of concern for the safety of the other patrons at the bar. Only after Defendant struck Officer Huertas

16

did the police use any force or touching with the intent to arrest the Defendant.

The only witness called by the Defense was the part-time chef and manager of Pleasant's Bar, who said that Defendant was a frequent patron. He further testified, in response to a question by the Court, that none of the police officers hit or in any manner assaulted the Defendant. His testimony was not at odds with the two (2) witnesses for the People. Accordingly the Court finds as a fact that the Defendant was not "seized" (as Defense Counsel argued), i.e. arrested, until after he allegedly committed the offenses of Aggravated Assault and Battery and Interfering With an Officer Discharging His Duty.

In the Defendant's Memorandum in support of his Motion to Dismiss the charges, Defense Counsel relies on a Superior Court case in which the Trial Judge granted the Defendant's motion to suppress marijuana and crack cocaine after a *Terry* investigatory type stop based on a violation of the Defendant's right under the Fourth Amendment. The Court opined:

> It is beyond doubt that in approaching Smith with guns drawn and demanding that he get down on the ground, the officers clearly seized him, implicating the Fourth Amendment. A reasonable person in Smith's situation would clearly believe that he was not free to "ignore the police and go about his business." *People of the Virgin Islands v. Smith*, 49 V.I. 229, 236 (Super. Ct. 2008).

Moreover, the Court discounted the police officers' contention that the Defendant was attempting to flee, but rather found based on the testimony that the Defendant was in fact running toward the officers in an attempt to comply with their directives. *Id.* at 235-236.

However, this case is easily distinguishable from the *Smith* case in both facts and applicable law. Unlike the cases cited by both the People and the Public Defender in their prehearing memoranda which all dealt with charges of possession of contraband, the charges before this Court are Aggravated Assault and Battery and Interfering With An Officer Discharging His Duty.

■ This Court follows the standard set forth in *United States v. Arvizu, supra*, regarding investigational stops. In that case, Chief Justice Rehnquist delivered the opinion of the unanimous Court as follows:

> Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable

cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." [In] mak[ing] reasonable-suspicion determinations, [Courts] must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard . . . . [A Court's decision] to "clearly delimit" an officer's consideration of certain factors to reduce "troubling . . . uncertainty," also runs counter to our cases and underestimates the usefulness of the reasonable-suspicion standard in guiding officers in the field. *Id.* at 273-275 (internal citations omitted).[1]

 Furthermore, this Court finds that the officers did have reasonable suspicion to stop the defendant for questioning. The Defendant also cited *U.S. v. Kareem Brown*, 448 F.3d 239 (3d Cir. 2006) in support of their motion to dismiss the charges. Here, like the other cases in Defendant's Memorandum, Brown was arrested and convicted of possession of firearm as a felon under the U.S. Code. In reversing Brown's conviction, the Circuit Court of Appeals held that the District Court's denial of the Defendant's motion to suppress the weapon was erroneous in that it did not meet *any* of the four (4) factors recognized by the Supreme Court to establish reasonable suspicion to justify this investigatory stop followed by a frisk of the Defendant's person, set forth below:

1. Presence of a suspect in a high crime area
2. A suspect's presence on a street at a late hour

---

[1] The reference to "A Court's decision" is to the Opinion of the Ninth Circuit Court of Appeals which nullified the District Court's ruling that accepted as credible and probative the reasons articulated by a border patrol agent for doing an investigatory stop of a minivan which was transporting Mexican aliens into Arizona based on his experience and particularized knowledge of his area of law enforcement.

3. A suspect's "nervous, evasive behavior or flight from the po-
lice"
4. A suspect behaves in a way that conforms to police officers'
specialized knowledge of criminal activity. *Id.* at 251.

In this case the Defendant's conduct after the officer observed him conform
with at least three (3) of the factors listed by our Court of Appeals. Since it
was only approximately 8:30 p.m., factor number two may not have been
met. Moreover, in citing *U.S. v. Arvizu, supra*, the Third Circuit Panel ac-
knowledged the standard applicable to law enforcement officers to be ap-
plied by trial courts in evaluating the reliability of officers' testimony.

An individual wearing dark clothing at night along with covering his
face with his hooded jacket, fleeing from police officers, who were
wearing vests that unequivocally identified them as police officers, can,
and in this instance, did create reasonable suspicion that criminal activity
may have been afoot. Upon review of the record, it is clear that there was
no unreasonable seizure of the Defendant prior to his arrest precipitated
by his assault on Officer Huertas, which was supported by People's
Exhibit 1 which illustrated a significant bruise to Officer Huertas' neck.
Officer Huertas testified that this occurred when the chain he was wearing
was ripped off by the Defendant as he struggled with the officer after the
Defendant hit him in the chest with his elbow.

## IV. Conclusion

The sole issue of this hearing is the appropriate standard to be
evaluated in this investigatory stop. While this situation involves a
non-vehicle stop, the standard of review in this Court's opinion, is well
defined and clarified by the Supreme Court Opinion in *U.S. v. Arvizu,
supra*. This Court's ruling in this case is bolstered by the Opinion issued
by the Honorable Judge Brenda Hollar in a similar factual history to this
case which also relied upon the Supreme Court's landmark decision in
*Arvizu*. *People v. Samuel*, 46 V.I. 177 (V.I. Super. 2005). This Court
concurs with the *Smith* ruling issued by an outstanding territorial Jurist.
Thus, the Defendant's motion to dismiss must be denied. A separate Order
of even date will be issued in conformity with these findings.