IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
April 24, 2023 04:29 PM
SX-2020-CR-00054
TAMARA CHARLES
CLERK OF THE COURT

SUPERIOR COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

PEOPLE OF THE VIRGIN ISLANDS,

PLAINTIFF,

V.

DANNY DELERME,

DEFENDANT.

SX-2020-CR-054

CITE AS: 2023 VI SUPER 17

**Appearances:**

**William Appleton, Jr., Esq.**
Virgin Islands Department of Justice
St. Croix, U.S. Virgin Islands
*For People of the Virgin Islands*

**Jeffrey Moorhead, Esq.**
Jeffrey B.C. Moorhead, P.C.
St. Croix, U.S. Virgin Islands
*For Danny Delerme*

## MEMORANDUM OPINION AND ORDER

**WILLOCKS, Senior Sitting Judge**

¶ 1    **THIS MATTER** is before the Court on Defendant Danny Delerme's (hereinafter "Defendant") motion to suppress, filed on September 15, 2022. On September 21, 2022, the People of the Virgin Islands (hereinafter "People") filed their oppositions thereto.

### BACKGROUND

¶ 2    On February 25, 2020, the People filed an information against Defendant based on the events that allegedly took place on or about February 4, 2020 as set forth in the affidavit of Police Officer Darryl Walcott (hereinafter "Officer Walcott") for securing an arrest warrant, dated February 20, 2020. The information charged Defendant with the following counts:

Count One. DANNY DELERME, did when not authorized by law, have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, to wit: a Taurus 9mm caliber model G2C serial #TLR98160, in violation of Title 14 V.I.C. § 2253(a). (UNAUTHORIZED POSSESSION OF A FIREARM)

Count Two. DANNY DELERME, when unauthorized by law, did, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, under his control in a vehicle, namely, a purple Suzuki Vitara, bearing license plate number CGM-305, in violation of Title 14 V.I.C. § 2253(e). (UNAUTHORIZED POSSESSION OF A FIREARM IN A VEHICLE)

Count Three. DANNY DELERME, when not authorized by law, did possess firearm ammunition, to wit: twelve (12) live 9mm caliber rounds, in violation of Title 14 V.I.C. § 2256(a). (POSSESSION OF AMMUNITION)

(Information.)

¶ 3      A copy of Officer Walcott's February 20, 2020 affidavit for securing an arrest warrant for Defendant was filed with the information. In his affidavit, Officer Walcott essentially stated: (i) On February 4, 2020, around 2:35 p.m., Officer Walcott received a tip that the tipster, while in the locker room at the refinery located at Lime Tree Bay Terminal, St. Croix, U.S. Virgin Islands, he observed Defendant, his coworker, pull out a black firearm from his waist inside his overall and place the firearm in his black backpack. (Walcott Aff. ¶ 4A); (ii) Officer Walcott contacted the security supervisor of the refinery and advised them of the situation. (Walcott Aff. ¶ 4B); (iii) The security supervisor advised Officer Walcott that he would look into this matter and that Defendant was scheduled to finish work at 4:30p.m. and exits the refinery at Gate #4. (Walcott Aff. ¶ 4B); (iv) A firearm record check was conducted, and the records indicated that Defendant does not have a license to possess a firearm or ammunition in the U.S. Virgin Islands. (Walcott Aff. ¶ 4C); (v) That afternoon, Officer Walcott and several other officers, including Sergeant Aldemar Santos (hereinafter "Sergeant Santos"), waited by Gate #4 for Defendant to exit the refinery. (Walcott Aff. ¶ 4D); (vi) Officer Walcott is familiar with Defendant and observed Defendant walking across

the street. (Walcott Aff. ¶ 4D); (vii) Sergeant Santos approached Defendant, advised him of the reason of their presence, and asked Defendant if he had a license to carry a firearm in the U.S. Virgin Islands, to which Defendant said no. (Walcott Aff. ¶ 4D); (viii) Defendant consented to a search of his person and a search was conducted of Defendant's person and no firearm was found. (Walcott Aff. ¶ 4E); (ix) Defendant did not consent to a search of his backpack. (Walcott Aff. ¶ 4E); (x) Sergeant Santos advised Defendant that the backpack would be confiscated while they secure a search warrant to search the backpack to determine whether the backpack contains a firearm. (Walcott Aff. ¶ 4E); (xi) Sergeant Santos provided Defendant with a property receipt which Defendant signed releasing the backpack to be held for evidence. (Walcott Aff. ¶ 4F); (xii) Sergeant Santos placed the backpack into a secured locker in the Police Operations building in Frederiksted to be held pending receipt of the search warrant. (Walcott Aff. ¶ 4F); (xiii) On February 7, 2020, Officer Walcott secured a search warrant and returned to the locker to execute a search of the backpack. (Walcott Aff. ¶ 4F); (xiv) Around 2:55 p.m., Detective Melissa Banuelos (hereinafter "Detective Banuelos") executed the search of the backpack which revealed a black firearm inside of a black holster. (Walcott Aff. ¶ 4G); (xv) Detective Banuelos advised Officer Walcott that the firearm was a "black Taurus 9mm Caliber Model G2C serial #TLR98160 and attached to the firearm was a laser light and twelve (12) live 9mm caliber rounds inside the magazine that was inserted into firearm." (Walcott Aff. ¶ 4G); and (xvi) The firearm recovered from Defendant's backpack was test fired and proven to be an operable firearm and that the ammunition was live. (Walcott Aff. ¶ 4H.)

¶ 4     On February 20, 2020, Officer Walcott, using the evidence obtained from Defendant's backpack as outlined above in his affidavit to secure an arrest warrant, prepared another affidavit

to secure a search warrant for Defendant's residence at No. 23 Constitution Hill, St. Croix, U.S. Virgin Islands (hereinafter "Residence") and a search warrant for Defendant's 1999 Suzuki Vitara (hereinafter "Vehicle").[1] Defendant's Residence and Vehicle were subsequently searched pursuant to the search warrants issued therefor.

¶ 5    On September 15, 2022, Defendant filed a motion to suppress. The People subsequently filed an opposition thereto.

¶ 6    On November 30, 2022, this matter came before the Court for a suppression hearing. At the suppression hearing, the Court inquired about the lawfulness of the seizure of the backpack and allowed counsel to brief the issue. As of the date of this Memorandum Opinion and Order, the People have not filed anything in response to the Court's inquiry about the lawfulness of the seizure of the backpack.

## STANDARD OF REVIEW

¶ 7    "The Fourth Amendment protects persons from 'unreasonable searches and seizures.'"[2] *People of the V.I. v. Looby*, 68 V.I. 683, 694 (V.I. 2016). To conduct a valid search under the Fourth Amendment, generally a judge or magistrate "must issue a warrant upon a finding of probable cause that describes, with particularity, both the place to be searched and the persons or things to be seized." *Id.* Searches conducted "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* (internal quotations omitted). Furthermore, as to seizures, the

---

[1] *See infra*, footnote 4.

[2] "The Fourth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954." *People of the V.I. v. Glasford*, 2022 V.I. LEXIS 40, at *10 (V.I. Super. Ct. Apr. 19, 2022) (citing *People of the V.I. v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (citing Revised Organic Act of 1954, § 3; 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87-88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1)).

Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Blyden v. People of the V.I.*, 53 V.I. 637, 647 (V.I. 2010) (citing *Brown v. Texas*, 443 U.S. 47, 50 (1979) (internal quotations omitted)).

¶ 8     "Although the burden of proving that a search or seizure was unlawful normally rests with the defendant, when the police conduct a search or seizure without a warrant, the burden shifts to the government to prove exigent circumstances or another exception to the warrant requirement." *Nicholas v. People of the V.I.*, 56 V.I. 718, 738 (V.I. 2012) (citations omitted); *see Armstrong*, 64 V.I. at 537 ("Although ordinarily it is the defendant who bears the burden of proving that evidence should be suppressed, this is not the case if a defendant has moved to suppress evidence on grounds that it was obtained without a warrant in violation of the Fourth Amendment. In such cases, although it is the defendant who has made the motion, it is the prosecution that bears the burden of proving that the warrantless search was reasonable."). Any evidence derived from a Fourth Amendment violation must be excluded from trial as "fruit of the poisonous tree." *Blyden*, 53 V.I. at 650 (citing *Wong v. U.S.*, 371 U.S. 471, 488 (1963)).

## DISCUSSION

¶ 9     In his motion to suppress,[3] Defendant moved to suppress the black backpack and all of its contents, including the black Taurus 9mm Caliber Model G2C serial #TLR98160 and the magazine with twelve (12) live 9mm caliber rounds, because they were obtained without a warrant in violation of the Fourth Amendment. (Motion.) Defendant also moved to suppress all items obtained pursuant to the search warrants for his Residence and Vehicle, including the 357 Mag.

---

[3] The following exhibits were attached to Defendant's motion: Exhibit 1-photos of a black backpack; Exhibit 2-Affidavit of Officer Walcott for securing a search warrant for a black backpack, dated February 6, 2020; Exhibit 3-search warrant for a black backpack, date February 7, 2020 and certified on February 14, 2020; Exhibit 4-photos of a black firearm and ammunitions; and Exhibit 5-crime scene evidence report of the search of Defendant's Residence.

Winchester live round, silver, recovered from his Residence, because they are the fruit of the poisonous tree. (Id.) Defendant made the following assertions in support of his argument: (i) "The Police lacked reasonable suspicion to believe that [Defendant's] backpack was evidence of a crime"—to wit, "There is nothing unusual or incriminating for an employee at Limetree or anyone to be carrying a backpack" and "[it] is not see-through and there was nothing to suggest that it contained evidence of a crime." (Id., at 6); (ii) "[T]here was nothing immediately apparent about [Defendant's] backpack that made it incriminating in character" so the plain view doctrine does not apply. (Id.); (iii) "The Government had over two (2) hours to obtain a telephonic or standard search warrant to search [Defendant]" and "[t]hey failed to do so," which "severely undercuts a government claim of exigent circumstances." (Id., at 7); (iv) The firearm obtained as the result of the illegal search of Defendant's backpack was used to obtain a search warrant for Defendant's Residence and Vehicle, and thus, anything obtained from the search of his residence and vehicle are "fruit of an illegal search and must be suppressed." (Id.)

¶ 10    In their opposition,[4] the People argued that the Court should deny the motion to suppress because the seizure of Defendant's backpack was lawful, the search warrant for Defendant's backpack was valid, and the subsequent search warrant for Defendant's Residence and Vehicle was also valid. (Opp. 4.) The People made the following assertions in support of their argument: (i) "The seizure of the Defendant's backpack in this case is supported by the totality of the circumstances and facts known to the officers at the time of the seizure, recognizing that officers may use their own training and experience as well as the observations of other officers in

---

[4] The following exhibits were attached to the People's motion: Exhibit 1-Affidavit of Officer Walcott for securing a search warrant for a black backpack, dated February 6, 2020; and Exhibit 2-Affidavit of Officer Walcott for securing search warrants for Defendant's Residence and Vehicle, dated February 20, 2020.

concluding whether reasonable suspicion or probable cause exists."[5] (Id., at 2-3); (ii) "[B]ased on the totality of the circumstances, reasonable suspicion existed that criminal activity was afoot, and an investigatory stop and inquiry was warranted." (Id, at 4); (iii) The admission by the Defendant that he did not have a license to carry a firearm in the U.S. Virgin Islands "in addition to information already reported to law enforcement provided probable cause to believe an unlicensed firearm was located inside the Defendant's backpack." (Id.); (iv) "Based on the totality of the circumstances and information known to the officers at this time, the Defendant's backpack was seized by law enforcement pending application to a judicial officer for a valid search warrant." (Id.); (v) "A search warrant specific to the backpack was secured from Magistrate Judge Miguel Camacho on February 7, 2022, and execution of said warrant resulted in recovery of one (1) black Taurus model G2C 9mm caliber firearm [serial number TLR98160]; one (1) firearm magazine containing twelve (12) live 9mm rounds; one (1) laser light; and one (1) black firearm holster and "[b]ased on this evidence, an additional search warrant was secured from Magistrate Judge Camacho on February 21, 2020, specific to the Defendant's [Residence], and execution of this search warrant resulted in seizure of one (1) live 357 caliber round." (Id., at 4-5); (v) "The backpack was lawfully seized because law enforcement reasonably believed the item contained evidence of criminal activity and exigent circumstances supported by probable cause existed to support the seizure"—to wit, "In this case, the Defendant possessed a highly mobile backpack, and the seizure was justified because the firearm could be easily removed, destroyed, or relocated by

---

[5] The People referenced: *United States v Arvizu*, 534 U.S. 266, 277 (2002).

the Defendant but for the seizure pending a search warrant."[6] (Id., at 5-6); (vi) "Law enforcement then secured and executed the search warrant within a reasonable time period, diligently conducted their investigation, and utilized minimally intrusive procedures to obtain the evidence" and "the Defendant was not unduly prejudiced by the seizure and securing a valid search warrant." (Id., at 4-5); (vii) "[T]he seizure of the backpack is analogous to seizure of a residence to prevent destruction of evidence while obtaining a warrant because law enforcement had probable cause to believe a firearm was in the readily mobile backpack and thus exigent circumstances warranted the seizure." (Id., at 6); (viii) "If the Court finds the initial search warrant was not timely secured, the Court should not suppress the statements and tangible evidence recovered because law enforcement acted in good faith when they executed the search warrant."[7] (Id., at 7); (ix) "Courts recognize 'four limited circumstances' in which a police officer's reliance on a warrant will not be considered 'objectively reasonable' [and]…none of the four limited circumstances exist in the facts before the Court."[8] (Id.)

### A. Analysis

¶ 11    The Court must note at the outset that Defendant did not dispute the lawfulness of the *Terry* stop and the *Terry* frisk by patting him down.[9] Instead, Defendant disputed the lawfulness

---

[6] The People referenced: (i) *U.S. v. Williams*, 365 F.3d 399, 406 (5th Cir. 2004); *U.S. v. Burgard*, 675 F.3d 1029, 1034-35 (7th Cir. 2012); *Smith v. Ohio*, 494 U.S. 541, 542043 (1990); *Kirk v. La.*, 536 U.S. 635, 638 (2002); *U.S. v. Brown*, 701 F. 3d 120, 126-27 (4th Cir. 2012); *Illinois v. McArthur*, 531 U.S.329, 337.

[7] The People referenced: *People of the V.I. v. John*, 654 F.3d 412, 417-18 (2011) (quoting *U.S. v. Leon*, 468 U.S. 897, 922 (1984)).

[8] The People referenced: *John*, 654 F.3d at 417-18 ("the 'four limited circumstances' in which a police officer's reliance on a warrant will not be considered 'objectively reasonable': 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function; 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized").

[9] "Although an officer is generally permitted to search a person or place only upon a finding of probable cause, the United States Supreme Court has determined that 'in appropriate circumstances the Fourth Amendment allows a

of the seizure of his backpack and the lawfulness of the subsequent search of his Residence and

Vehicle. In summary, Defendant essentially argued that the Court should suppress all the evidence

recovered from his backpack because the backpack was unlawfully seized without a warrant in

violation of the Fourth Amendment, and given that the evidence recovered from the backpack was

used as the basis to obtain a search warrant for his Residence and Vehicle, Defendant argued that

the Court should also suppress all the evidence seized from his Residence and Vehicle. In response,

---

properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime." *Looby*, 68 V.I. at 694; *see Blyden*, 53 V.I. at 647 (quoting *Brown*, 443 U.S. at 50 (alteration in original) (internal quotations omitted). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person, and the Fourth Amendment requires that the seizure be 'reasonable.'" *Blyden*, 53 V.I. at 647. In *Blyden*, the Virgin Islands Supreme Court pointed to the seminal case of *Terry v. Ohio*, 392 U.S. 1 (1968), as an example of such appropriate circumstances when a "police officer may stop a suspect on the street and conduct a limited search, i.e. a frisk, of the suspect without probable cause." *Blyden*, 53 V.I. at 648; *see Looby*, 68 V.I. at 685. In *Terry*, the United States Supreme Court held that a "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him" and that "[s]uch a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." 392 U.S. at 30-31. In other words, the reasonable suspicion that an individual is engaged in criminal activity "allows an officer to briefly detain a person to determine if a crime has been committed or is about to be committed." *Emanuel v. People of the V.I.*, 68 V.I. 666, 673 (V.I. 2018) (citing *Gumbs*, 64 V.I. at 508 (citing *Terry*, 392 U.S. at 30)). The Virgin Islands Supreme Court explained:

> To have reasonable suspicion, an officer must have specific and articulable facts under the totality of the circumstances that the person stopped is or was involved in criminal activity. *United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir. 2004). This is a lesser standard than probable cause but requires more than an officer's mere hunch. *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017). To find that reasonable suspicion existed to justify a stop, a court must examine the "totality of the circumstances" in the situation at hand, in light of the individual officers' own training and experience, and should uphold the stop only if it finds that "the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)).

> *Emanuel*, 68 V.I. at 673; *see Looby*, 68 V.I. at 693.

"A '*Terry*' stop, simply put, is an investigatory process which usually entails a vehicular stop, but encompasses any attempt by a law enforcement officer to literally stop an individual to question the person." *Somme*, 71 V.I. 82 (V.I. Super. Ct. July 8, 2019) (quoting *People v. Blake*, 65 V.I. 13, 16 (V.I. Super. Ct. 2012) (italics added)). The presence of reasonable suspicion for a lawful *Terry* stop does not automatically render the subsequent *Terry* frisk lawful, and thus, "the validity of the *Terry* frisk, like an initial *Terry* stop, is considered independently under the totality of the circumstances." *Looby*, 68 V.I. at 695.

the People essentially argued that the seizure of the backpack was lawful because the officers "reasonably believed the item contained evidence of criminal activity and exigent circumstances supported by probable cause existed to support the seizure" and that even if there was any defect to the search warrant obtained for Defendant's Residence and Vehicle, the evidence recovered should not be suppressed because the officers acted in good faith when they executed the search warrant. (Opp.) Given that Defendant moved to suppress the evidence on grounds that the backpack was seized without a warrant in violation of the Fourth Amendment, and it is not in dispute that the backpack was seized without a warrant, the People bear the burden to demonstrate that the seizure of the backpack was permissible under an exception to the warrant requirement of the Fourth Amendment. *See Armstrong*, 64 V.I. at 537.

### 1. Seizure of Defendant's Backpack

¶ 12    "The Fourth Amendment prohibits unreasonable searches and seizures, and 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.'" *Nicholas*, 56 V.I. at 738. More specifically, "[t]he Fourth Amendment protects people, not places, and wherever an individual may harbor a reasonable 'expectation of privacy,' he is entitled to be free from unreasonable governmental intrusion. *Terry*, 392 U.S. at 9 (citations omitted).

¶ 13    In this instance, Defendant had a reasonable expectation of privacy to his personal items such as his backpack. Consequently, a warrantless seizure of Defendant's backpack infringed upon Defendant's Fourth Amendment rights and must be justified by an exception to the warrant requirement.

### a. Exception to the Warrant Requirement

¶ 14    Of the various exceptions to the warrant requirement which have been recognized by the United States Supreme Court, the People in this matter relied upon the exigent circumstances exception due to the possibility that evidence may be removed or destroyed. "Under the exigent circumstances exception, a warrantless search is permissible only when there are both probable cause and exigent circumstances." *Gov't of the V.I. v. Fabiani-Ogno*, 20 V.I. 404, 409-10 (V.I. Terr. Ct. March 29, 1 984) (citing *Warden v. Hayden*, 387 U.S. 294, (1967); *Arkansas v. Sanders*, 442 U.S. 753 (1979)); *see Simmonds v. People*, 53 V.I. 549, 559-60 (V.I. 2010). The possibility that evidence may be removed or destroyed has been recognized as an example of exigent circumstances. *Simmonds*, 53 V.I. at 560. *see also, People of the V.I. v. Schulterbrandt*, 2016 V.I. LEXIS 121, at *15 (V.I. Super. Ct. Aug. 22, 2016) ("Furthermore, '[e]xigent circumstances exist when officers are in hot pursuit of a fleeing suspect, when they 'reasonably … believe that someone is in imminent danger,' or when they reasonably believe they must act "to prevent the imminent destruction of evidence.'"). "A search justified by the exigency doctrine 'must be strictly circumscribed by the exigencies which justify its initiation.'" *Thomas v. People of the V.I.*, 63 V.I. 595, 606 (V.I. 2015) (quoting *Mincey v. Arizona*, 437 U.S. 385, 393 (quoting *Terry*, 392 U.S. 1, 25-26). "Here, the prevailing consideration is 'imminence — the existence of a true emergency.'" *People of the V.I. v. Schulterbrandt*, 2016 V.I. LEXIS 121, *15 (V.I. Super. Ct. Aug. 22, 2016). In other words, when the exigent circumstance loses its imminence, the officers also lose the justification supporting a warrantless intrusion of privacy.

¶ 15    In this instance, Officer Walcott received the tip around 2:35 p.m., and since it was not until later that afternoon around 4:30 p.m. that Defendant's backpack was seized, there was no

exigent or emergency situation that would justify the officers' warrantless intrusion of Defendant's privacy at the time of the seizure. To put it another way, the exigent circumstance had lost its imminence with the passage of time when the officers waited approximately two hours after receiving the tip to seize Defendant's backpack. *See Schulterbrandt*, 2016 V.I. LEXIS 121, at *15. Thus, the warrantless seizure was not justified by the exigent circumstances exception,[10] and therefore, the seizure of Defendant's backpack was unlawful.

## 2. Search of Defendant's Backpack

¶ 16     The Court must next address whether the search of Defendant's backpack, pursuant to a search warrant obtained after the unlawful seizure, was lawful. Defendant did not challenge the validity of the search warrant for the backpack. Rather, Defendant argued that the illegal seizure of his backpack prior to obtaining a search warrant violated his Fourth Amendment rights and, as a result of that, all evidence subsequently recovered from his backpack should be suppressed.

¶ 17     As noted above, while Defendant's backpack was seized on February 4, 2020, the search warrant for the backpack was not obtained until February 7, 2020.[11] In their motion, the People did not address the reason for the officer's failure to obtain a warrant prior to the seizure or the officer's three-day delay in obtaining a search warrant after the seizure; instead, the People simply asserted, without any supporting authority, that the search warrant was obtained and executed within a reasonable time. Furthermore, the People also asserted that the seizure of Defendant's backpack "is analogous to seizure of a residence to prevent destruction of evidence while obtaining a warrant because law enforcement had probable cause to believe a firearm was in the readily

---

[10] Due to the Court's finding that no exigent circumstance was present, the Court need not address the issue of whether probable cause existed at the time Defendant's backpack was seized.

[11] The search warrant for the backpack was obtained based on the affidavit of Officer Walcott, dated February 6, 2020.

mobile backpack and thus exigent circumstances warranted the seizure" and "[i]f the Court finds the initial search warrant was not timely secured, the Court should not suppress the statements and tangible evidence recovered because law enforcement acted in good faith when they executed the search warrant." (Opp. 6-7.) The Court finds the People's argument unpersuasive. First, as to the People's analogy, as noted above, the Court finds that no exigent circumstance existed at the time of the seizure. Second, as to the People's good faith argument, accepting the People's reasoning here would render meaningless the Fourth Amendment's protections against unreasonable searches and seizures—to wit, by allowing the good faith exception for the unlawful seizure of the backpack would defeat the purpose of the exclusionary rule, for it would remove the incentive for the police to follow the proper protocol for a lawful seizure and circumvent the exclusionary rule by simply obtaining a search warrant after the unlawful seizure and relying on the good faith exception to render the evidence recovered admissible. *See Herring v. U.S.*, 555 U.S. 135, 144 (2009) ("As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").[12] As

---

[12] In *Herring*, the United States Supreme Court addressed the "good faith" exception to the exclusionary rule that it had previously established in *U.S. v. Leon*, 468 U.S. 897 (1984). In *Herring*, the United States Supreme Court explained:

1. The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. *Illinois* v. *Gates*, 462 U.S. 213, 223, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Indeed, exclusion "has always been our last resort, not our first impulse," *Hudson* v. *Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006), and our precedents establish important principles that constrain application of the exclusionary rule.

First, the exclusionary rule is not an individual right and applies only where it "'result[s] in appreciable deterrence.'" *Leon, supra*, at 909, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (quoting *United States* v. *Janis*, 428 U.S. 433, 454, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976)). We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. *Leon, supra*, at 905-906, 104 S. Ct. 3405, 82 L. Ed. 2d 677; *Evans, supra*, at 13-14, 115 S. Ct. 1185, 131 L. Ed. 2d 34 ; *Pennsylvania Bd. of Probation and Parole* v. *Scott*, 524 U.S. 357, 363, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998). Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future. See *Calandra, supra*, at 347-355, 94 S. Ct. 613, 38 L. Ed. 2d 561; *Stone* v. *Powell*, 428 U.S. 465, 486, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

In addition, the benefits of deterrence must outweigh the costs. *Leon, supra*, at 910, 104 S. Ct. 3405, 82 L. Ed. 2d 677. "We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence." *Scott, supra*, at 368, 118 S. Ct. 2014, 141 L. Ed. 2d 344. "[T]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs." *Illinois* v. *Krull*, 480 U.S. 340, 352-353, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) (internal quotation marks omitted). The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free—something that "offends basic concepts of the criminal justice system." *Leon, supra*, at 908, 104 S. Ct. 3405, 82 L. Ed. 2d 677. "[T]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." *Scott, supra*, at 364-365, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (internal quotation marks omitted); see also *United States* v. *Havens*, 446 U.S. 620, 626-627, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980); *United States* v. *Payner*, 447 U.S. 727, 734, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980).

These principles are reflected in the holding of *Leon*: When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant. 468 U.S., at 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677. We (perhaps confusingly) called this objectively reasonable reliance "good faith." *Ibid.*, at 922, n 23, 104 S. Ct. 3405, 82 L. Ed. 2d 677. In a companion case, *Massachusetts* v. *Sheppard*, 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984), we held that the exclusionary rule did not apply when a warrant was invalid because a judge forgot to make "clerical corrections" to it. *Id.*, at 991, 104 S. Ct. 3424, 82 L. Ed. 2d 737.

Shortly thereafter we extended these holdings to warrantless administrative searches performed in good-faith reliance on a statute later declared unconstitutional. *Krull, supra*, at 349-350, 107 S. Ct. 1160, 94 L. Ed. 2d 364. Finally, in *Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34, we applied this good-faith rule to police who reasonably relied on mistaken information in a court's database that an arrest warrant was outstanding. We held that a mistake made by a judicial employee could not give rise to exclusion for three reasons: The exclusionary rule was crafted to curb police rather than judicial misconduct; court employees were unlikely to try to subvert the Fourth Amendment; and "most important, there [was] no basis for believing that application of the exclusionary rule in [those] circumstances" would have any significant effect in deterring the errors. *Id.*, at 15, 115 S. Ct. 1185, 131 L. Ed. 2d 34. *Evans* left unresolved "whether the evidence should be suppressed if police personnel were responsible for the error," an issue not argued by the State in that case, *id.*, at 16, n 5, 115 S. Ct. 1185, 131 L. Ed. 2d 34, but one that we now confront.

2. The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct. As we said in *Leon*, "an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule. 468 U.S., at 911, 104 S. Ct. 3405, 82 L. Ed. 2d 677. Similarly, in *Krull* we elaborated that "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" 480 U.S., at 348-349, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (quoting *United States* v. *Peltier*, 422 U.S. 531, 542, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975)).

Anticipating the good-faith exception to the exclusionary rule, Judge Friendly wrote that "[t]he beneficent aim of the exclusionary rule to deter police misconduct can be sufficiently accomplished by a practice . . . outlawing evidence obtained by flagrant or deliberate violation of rights." The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 (1965) (footnotes omitted); see also *Brown* v. *Illinois*, 422 U.S. 590, 610-611, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (Powell, J., concurring in part) ("[T]he deterrent value of the exclusionary rule is most likely to be effective" when "official conduct was flagrantly abusive of Fourth Amendment rights").

Indeed, the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional. In *Weeks*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652, T.D. 1964, a foundational exclusionary rule case, the officers had broken into the defendant's home (using a key shown to them by a neighbor), confiscated incriminating papers, then returned again with a U. S. Marshal to confiscate even more. *Id.*, at 386, 34 S. Ct. 341, 58 L. Ed. 652. Not only did they have no search warrant, which the Court

held was required, but they could not have gotten one had they tried. They were so lacking in sworn and particularized information that "not even an order of court would have justified such procedure." *Id.*, at 393-394, 34 S. Ct. 341, 58 L. Ed. 652. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319, T.D. 2984, 17 Ohio L. Rep. 514 (1920), on which petitioner repeatedly relies, was similar; federal officials "without a shadow of authority" went to the defendants' office and "made a clean sweep" of every paper they could find. *Id.*, at 390, 40 S. Ct. 182, 64 L. Ed. 319. Even the Government seemed to acknowledge that the "seizure was an outrage." *Id.*, at 391, 40 S. Ct. 182, 64 L. Ed. 319.

Equally flagrant conduct was at issue in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 86 Ohio Law Abs. 513 (1961), which overruled *Wolf v. Colorado*, 338 U.S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), and extended the exclusionary rule to the States. Officers forced open a door to Ms. Mapp's house, kept her lawyer from entering, brandished what the court concluded was a false warrant, then forced her into handcuffs and canvassed the house for obscenity. 367 U.S., at 644-645, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. See Friendly, *supra*, at 953, and n 127 ("[T]he situation in *Mapp*" featured a "flagrant or deliberate violation of rights"). An error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place. And in fact since *Leon*, we have never applied the rule to exclude evidence obtained in violation of the Fourth Amendment, where the police conduct was no more intentional or culpable than this.

3. To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.

Our decision in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), provides an analogy. Cf. *Leon*, *supra*, at 914, 104 S. Ct. 3405, 82 L. Ed. 2d 677. In *Franks*, we held that police negligence in obtaining a warrant did not even rise to the level of a Fourth Amendment violation, let alone meet the more stringent test for triggering the exclusionary rule. We held that the Constitution allowed defendants, in some circumstances, "to challenge the truthfulness of factual statements made in an affidavit supporting the warrant," even after the warrant had issued. 438 U.S., at 155-156, 98 S. Ct. 2674, 57 L. Ed. 2d 667. If those false statements were necessary to the Magistrate Judge's probable-cause determination, the warrant would be "voided." *Ibid.* But we did not find all false statements relevant: "There must be allegations of deliberate falsehood or of reckless disregard for the truth," and "[a]llegations of negligence or innocent mistake are insufficient." *Id.*, at 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667.

Both this case and *Franks* concern false information provided by police. Under *Franks*, negligent police miscommunications in the course of acquiring a warrant do not provide a basis to rescind a warrant and render a search or arrest invalid. Here, the miscommunications occurred in a different context—after the warrant had been issued and recalled—but that fact should not require excluding the evidence obtained.

The pertinent analysis of deterrence and culpability is objective, not an "inquiry into the subjective awareness of arresting officers," Reply Brief for Petitioner 4-5. See also *post*, at 157, n 7, 172 L. Ed. 2d, at 515 (Ginsburg, J., dissenting). We have already held that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." *Leon*, 468 U.S., at 922, n 23, 104 S. Ct. 3405, 82 L. Ed. 2d 677. These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, *Ornelas v. United States*, 517 U.S. 690, 699-700, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), but not his subjective intent, *Whren v. United States*, 517 U.S. 806, 812-813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

4. We do not suggest that all recordkeeping errors by the police are immune from the exclusionary rule. In this case, however, the conduct at issue was not so objectively culpable as to require exclusion. In *Leon*, we held that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of

such, the Court finds that the subsequent search of the unlawfully seized backpack pursuant to a

warrant obtained three days after the initial seizure was unlawful[13] and that the evidence derived

from this Fourth Amendment violation must be excluded as "fruit of the poisonous tree." *Blyden*,

53 V.I. at 650.

### 3. Search of Defendant's Residence and Vehicle

¶ 18    Given the Court's finding that the evidence obtained from Defendant's backpack must be

excluded as fruit of the poisonous tree, and given that it was used as the basis for the subsequent

---

exclusion." 468 U.S., at 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677. The same is true when evidence is obtained in objectively reasonable reliance on a subsequently recalled warrant.

If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation. We said as much in *Leon*, explaining that an officer could not "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.*, at 923, n 24, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (citing *Whiteley* v. *Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971)). Petitioner's fears that our decision will cause police departments to deliberately keep their officers ignorant, Brief for Petitioner 37-39, are thus unfounded.

555 U.S. at 140-46.

[13] Interestingly, the People did not reference in their brief *Browne v. People of the V.I.*, the case where the Virgin Islands Supreme Court held that evidence obtained pursuant to an authorized search warrant of the vehicle was admissible notwithstanding the illegality, if any, of the initial seizure of the vehicle. 56 V.I. 207, 220-21 (V.I. 2012). The Court, nevertheless, finds it important to mention *Browne* here and point out the important factual differences which distinguish this case from *Browne*. First, the evidence at issue here was obtained from an illegally seized backpack and not an illegally seized vehicle as in *Browne*. In *Browne*, the Virgin Islands Supreme Court made it clear that their "holding should not be read as sanctioning police conduct intended to hold a suspect's car without probable cause while the police attempt to gather additional information [and] [s]uch conduct would be a clear violation of the Fourth Amendment" and that they "hold only that evidence obtained even from an illegally seized vehicle is not subject to the exclusionary rule when it was subsequently discovered pursuant to a validly issued warrant and free from any taint of an illegal seizure." 56 V.I. at 221 n.11. Second, the search warrant for the backpack was obtained three days after the seizure and not obtained several hours later as in *Browne*. In *Browne*, the Virgin Islands Supreme Court reasoned that "[i]f the VIPD had simply maintained their surveillance of Jeffrey's car for several hours and impounded it after they had obtained the search warrant, the evidence in the vehicle would have been discovered and unquestionably admitted." 56 V.I. at 220 (citing *See Segura*, 468 U.S. at 815; *Glover*, 9 Fed. Appx. at 172.). The surveillance of a backpack for three days would have been vastly differently—not to mention, more difficult—than the surveillance of a vehicle for several hours. As such, the Court finds *Browne's* holding inapplicable in this instance.

The Court must clarify that this holding—that evidence obtained pursuant to a search warrant obtained three days after the vehicle was unlawfully seized must be excluded—is based on the facts of this case and that each case involving evidence obtained pursuant to a search warrant after an initial unlawful seizure should be examined on a case-by-case basis.

search warrant for Defendant's Residence and Vehicle, the Court finds that the evidence recovered from Defendant's Residence and Vehicle pursuant to said search warrant must also be excluded as "fruit of the poisonous tree." *Blyden*, 53 V.I. at 650.

## CONCLUSION

Based on the foregoing, it is hereby:

**ORDERED** that Defendant's motion to suppress the black backpack and all of its contents, including the black Taurus 9mm Caliber Model G2C serial #TLR98160 and the magazine with twelve (12) live 9mm caliber rounds, and all items obtained pursuant to the search warrants for Defendant's Residence and Vehicle, including the 357 Mag. Winchester live round, silver, recovered from his Residence, filed on September 15, 2022, is **GRANTED**.

**DONE and so ORDERED this 24th day of April, 2023.**

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk Supervisor II

Dated: 4/24/2023

HAROLD W.L. WILLOCKS
**Senior Sitting Judge of the Superior Court**

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
April 24, 2023 04:30 PM
SX-2020-CR-00054
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

---

**People of the Virgin Islands v. Danny Joel Delerme**

Case Number: **SX-2020-CR-00054**
Charges: **14 V.I.C. 2253(a) - Possession Of An Unlicense Firearm**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**

## NOTICE of ENTRY
## of
## <u>Memorandum Opinion and Order</u>

**To:** William A. Appleton, Jr.                Jeffrey B. C. Moorhead, Esq.

**Please take notice that on April 24, 2023**
a(n) _____ **Memorandum Opinion and Order** _____
dated _____ **April 24,2023** _____ **was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:** **April 24, 2023**
_____

                                     **Tamara Charles**
                                     **Clerk of the Court**

By:

_____
**Janeen Maranda**
**Court Clerk II**